PUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

CARA'S NOTIONS, INCORPORATED,
d/b/a Cara's Hallmark,
<u>Plaintiff-Appellee,</u>

v.                                                                No. 97-1696

HALLMARK CARDS, INCORPORATED;
HALLMARK MARKETING CORPORATION,
<u>Defendants-Appellants.</u>

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Robert D. Potter, Senior District Judge.
(CA-97-18-3-P)

Argued: January 28, 1998

Decided: March 31, 1998

Before MURNAGHAN, NIEMEYER, and MOTZ, Circuit Judges.

_____

Reversed by published opinion. Judge Murnaghan wrote the opinion,
in which Judge Niemeyer and Judge Motz joined.

_____

**COUNSEL**

**ARGUED:** Thomas Dean Myrick, SMITH, HELMS, MULLISS &
MOORE, L.L.P., Charlotte, North Carolina, for Appellants. Charles
Henry Rabon, Jr., KILPATRICK STOCKTON, L.L.P., Charlotte,
North Carolina, for Appellee. **ON BRIEF:** Jackson N. Steele, KIL-
PATRICK STOCKTON, L.L.P., Charlotte, North Carolina, for
Appellee.

**OPINION**

MURNAGHAN, Circuit Judge:

Cara's Notions, Inc., operates two Hallmark stores. The first store is the subject of a "Trademark License Agreement" between Hallmark Cards, Inc., and Betty and Jerald Gibson, the owners and officers of Cara's Notions. The second store is the subject of an "Account Agreement" between Hallmark Cards, Inc. and Hallmark Marketing Corporation (collectively "Hallmark"), and Cara's Notions, Inc., itself. We are called upon in this case to determine whether a broad arbitration clause in the Account Agreement mandates arbitration of a dispute between Cara's Notions, as plaintiff, and Hallmark, as defendant, regarding the first store.

The district court denied Hallmark's motion to compel arbitration because there was no arbitration clause in the first contract. In so doing, the district court failed to recognize that the parties to the two contracts differ, neglected to consider the actual language of the arbitration clause when interpreting the contracts and declined to defer to the strong federal policy favoring arbitration of disputes. We reverse.

I.

In 1984, Roberta Gibson was given permission by Hallmark to become a Hallmark retailer. In November of 1984, Roberta Gibson opened Cara's Hallmark Shop at Town Center Shopping Center in Charlotte, North Carolina ("Store I").

In 1990, Betty Gibson and her husband Jerald Gibson ("the Gibsons"), bought Store I from Roberta Gibson. Hallmark approved the Gibsons as the new owners of Store I. Hallmark Cards, Inc. signed a "Trademark License Agreement" with the Gibsons ("Contract I"). Contract I provided that Betty and Jerald Gibson could use the "Hallmark" trademark without paying royalties and that the Gibsons would abide by certain guidelines for the trademark use. The contract made no mention of arbitration of any disputes.

At some point in the next few years, the Gibsons incorporated Cara's Notions, Inc., the plaintiff. The Gibsons jointly owned Cara's

2

Notions; Betty served as president and Jerald as secretary and treasurer. The record does not reflect when Cara's Notions was incorporated or whether there was any novation substituting Cara's Notions for the Gibsons as parties to Contract I.

In 1994, the Gibsons wanted to purchase a second Hallmark shop, in Concord, North Carolina ("Store II"). The Gibsons completed an application on behalf of Cara's Notions, Inc. In May of 1994, Hallmark and Cara's Notions entered into a "Hallmark Account Agreement" ("Contract II"), permitting Cara's Notions to operate the second Hallmark store in Concord. Contract II detailed Hallmark's and Cara's Notions' responsibilities regarding the sale and display of Hallmark products. Contract II also contained an arbitration clause which provided:

> Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, or any aspects of the relationship between Hallmark and Retailer,[1] or the termination thereof, shall be settled by binding arbitration under the United States Arbitration Act in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment upon the award may be entered in any court having jurisdiction thereof.

Since then Cara's Notions, Inc., has operated both Store I and Store II.

In early 1995, the landlord at Store I notified the Gibsons that they would have to move the store because a grocery store in the shopping center intended to expand into its space. The Gibsons claim that Hallmark promised that it would help them find a new location for their Store I. The Gibsons further claim that they suggested a new location to Hallmark, in a shopping center called "The Village at University Place." According to the Gibsons, Hallmark representatives inspected the center and decided it was a favorable location for a Hallmark store, but instead of helping the Gibsons get a lease at that location as it had promised, Hallmark negotiated a lease at the Village at University Place for itself.

_____
[1] The "Retailer" was defined as Cara's Notions, Inc.

3

In December of 1996, Cara's Notions filed a complaint in state court against Hallmark, alleging that Hallmark's taking of the new location for itself breached the duty of good faith and fair dealing, was an unfair and deceptive trade practice, usurped an opportunity of the principal and was an illegal misrepresentation. Cara's Notions sought actual and punitive damages against Hallmark. Hallmark removed the case to federal court and moved to compel arbitration, asserting that the arbitration agreement in Contract II covered this dispute between the parties.

Believing that matters regarding Store I were governed only by Contract I and that matters regarding Store II were governed only by Contract II, the district court denied the motion to compel arbitration. The court held that "[b]ecause Contract I does not contain an arbitration clause, this matter regarding Store I is not subject to arbitration." The district court held that the arbitration clause in Contract II did not modify the relationship created by Contract I because it believed that the first contract's merger clause required any modification to be "in writing with a specific reference to Store I." It further held that the arbitration clause in Contract II did not apply directly to matters regarding Store I because "the boilerplate contract [II], in its introduction, specifically states that the contract is in reference to Store II," and because the merger clause in Contract II uses the singular term "a Hallmark account" instead of a plural term such as "accounts," thus "specifically limit[ing] its scope to Store II." Significantly, the district court did not address the language of the arbitration clause itself in denying its effect in this case.

Hallmark has appealed the dismissal of its Motion to Compel Arbitration and its Motion to Dismiss or in the Alternative to Stay Proceeding Pending Arbitration.

II.

A.

The Arbitration Act requires a federal court to grant a motion to stay a proceeding pending the arbitration of "any issue referable to arbitration under an agreement in writing for such arbitration." 9 U.S.C. § 3. Because the examination of the scope of an arbitration

4

agreement is primarily a task of contract interpretation, we review a district court's determination of the arbitrability of a dispute de novo. See Summer Rain v. Donning Co./Publishers, Inc., 964 F.2d 1455, 1459-60 (4th Cir. 1992). However, "in applying general state-law principles of contract interpretation to the interpretation of an arbitration agreement within the scope of the [Arbitration] Act, due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Jr. Univ., 489 U.S. 468, 475-76 (1989) (quoted in Summer Rain, 964 F.2d at 1460).

B.

A straightforward examination of the two contracts reveals that the district court erred in refusing to compel arbitration of this dispute. The plaintiff in the case is Cara's Notions, not the Gibsons. The only contract between Cara's Notions and Hallmark is Contract II, which contains an extremely broad arbitration clause:"Any controversy or claim arising out of or relating to . . . any aspects of the relationship between Hallmark and Retailer . . . shall be settled by binding arbitration . . . ." The "Retailer" is defined in the contract as Cara's Notions. The instant conflict certainly relates to an aspect of the relationship between Hallmark and Cara's Notions. Therefore Contract II mandates arbitration of this dispute.

C.

The district court concluded otherwise, however. In defense of the district court's decision, Cara's Notions asserts that Contract II was intended to apply only to claims or controversies regarding Store II, not those regarding Store I. Cara's Notions further asserts that the instant conflict arose solely out of the relationship between Hallmark and Store I, and therefore is governed by Contract I (which contains no arbitration clause).**2** Cara's Notions points out that a court may not

_____

**2** This claim might not help Cara's Notions, however; because Cara's Notions was not a party to Contract I, it may have no standing to pursue the Gibsons' claim. The district court appears not to have noticed the dif-

5

require a party to "submit to arbitration any dispute which he has not agreed so to submit," <u>AT&T Technologies, Inc. v. Communications Workers of America</u>, 475 U.S. 643, 648 (1986) (quoting <u>United Steelworkers of America v. Warrior & Gulf Navigation Co.</u>, 363 U.S. 574, 582 (1960)) (internal quotation marks omitted), and argues that because Hallmark chose to deal with each of its stores separately and assigned them each a different account number, it may not "bootstrap" the requirement to arbitrate found in Contract II into the present dispute, arising from Contract I.

In determining "whether the arbitration clause in Contract II applies to matters regarding Contract I," the district court exhaustively analyzed numerous parts of the two contracts, but did not address the language of the arbitration clause itself. First the district court analyzed the merger clause found in Contract I. That clause provides that:

> This agreement supersedes all prior oral or written representations and constitutes the entire understanding between Licensee and Hallmark with respect to the use of the HALLMARK trademark; [sic] in connection with licensee's operation of the shop and may be modified only in writing.

The district court claimed that this clause "specifically provide[s] that any modification of the agreement concerning Store I must be in writing <u>with a specific reference to Store I</u>." Cara's Notions also argues that Contract I "can only be modified in a writing making specific reference to <u>that shop</u> [Store I]." Those arguments are baseless. It is

_____

ference in parties between Contract I and Contract II. Perhaps it was presented with some evidence of a novation, but no such evidence appears in our record nor was either attorney at oral argument aware of any such evidence.

To avoid a dismissal on this basis, the Plaintiff/Appellee's attorney asserted at oral argument that at some point (he did not know when) Cara's Notions obtained the license rights to Store I from the Gibsons. On remand, the district court should first determine whether Cara's Notions even has standing to assert the underlying claims before proceeding to the merits of the case.

6

clear that Contract I can only be modified in writing, but Contract II is in writing. Nothing in the merger clause or anywhere else in either contract provides any support for the assertion that that writing must specifically refer to Store I.

Second, the district court observed that the introduction to Contract II specifically refers only to Store II. Contract II begins with a series of "whereas" clauses, one of which identifies the location of the store premises where Cara's Notions desired to open Store II. None mentions the location (or even existence) of Store I. This does suggest that Contract II focuses on Store II. It does not mean, however, that no term of Contract II can have altered the general relationship between Cara's Notions and Hallmark. It is possible that, even though Contract II focuses on Store II, the parties intended certain terms of the contract to apply to all of the dealings between the parties.

Third, the district court argued that the merger clause in Contract II, by use of the singular term "account" instead of the plural term "accounts," suggests that Contract II was only meant to apply to Store II. The merger clause in Contract II provides:

> This agreement supersedes all prior oral or written representations and constitutes the entire understanding between Retailer and Hallmark with respect to Retailer's status as <u>a Hallmark Account</u> and may only be modified by written agreement of Hallmark and Retailer.

The district court concluded that the "reference to an account in the singular, as opposed to the plural, can only mean that [Contract II] referred to the specific account number that was the subject of the contract [Store II]." Had the parties intended the contract to apply to both stores, the district court observed, they could have used the plural term "accounts."

It may be true that the use of the singular "account" further suggests that Contract II was focused on Store II. **3** On the other hand, the

_____

**3** In fact, the very existence of a merger clause claiming that the agreement supersedes <u>all</u> earlier representations and constitutes the <u>entire</u>

7

clause's reference to the "Retailer's <u>status</u> as a Hallmark account" could have been meant to encompass the retailer's ownership of one or many accounts. Of course, the merger clause could also have been written to refer to the "Retailer's status as an owner of Hallmark account<u>s</u>." Such speculation does not get us very far.

Fourth, the district court noted that no one from Hallmark told the Gibsons that Contract II would have anything to do with Store I, and Cara's Notions argues that, partially for this reason, it would be unfair now to hold that a conflict regarding Store I must be arbitrated. Betty Gibson complained in her affidavit that no one from Hallmark went over with her any provisions of the forms that she and her husband signed in order to be considered as a Hallmark retailer in Store II. No one from Hallmark attempted to point out any differences between these forms and the earlier forms they had signed regarding Store I or ever stated that the forms were intended to affect any part of the relationship between the Gibsons and Hallmark regarding the first store.

We are unmoved. The Gibsons are sophisticated business people and Cara's Notions, Inc., dealt with Hallmark at arm's length. Both parties to such a commercial contract have a duty to read the contract carefully and are presumed to understand it.**4** <u>See Sanger v. Yellow Cab Co.</u>, 486 S.W.2d 477, 481 (Mo. 1972) (<u>en banc</u>); <u>Harris v.</u>

_____

understanding between the retailer and Hallmark can be understood as supporting the district court's view that Contract II was not intended to refer to both stores, but only to refer to Store II. After all, neither party believes that Contract II abrogated Contract I, which would be the logical conclusion if Contract II's merger clause were given broad and literal effect. However, the force of this argument is substantially undermined by the fact that Contracts I and II were between different parties. It is perfectly consistent to say that Contract II represents the entire understanding between Hallmark and Cara's Notions and that Contract I represents the entire understanding between Hallmark and the Gibsons.

**4** The very last line of Contract II before the signatures read, in all capital letters, "THIS AGREEMENT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES (PARA. 10)."

Bingham, 97 S.E.2d 453, 454 (N.C. 1957).**5** A corporation desirous of running multiple businesses ought to consult with an attorney if its president and secretary/treasurer cannot understand the contracts into which it intends to enter. Unsurprisingly, Cara's Notions cites no legal authority for the proposition that a corporation may avoid its contractual obligations if it misunderstood them or did not read them carefully enough.**6**

The arguments made by Cara's Notions and by the district court to support the judgment that the underlying claim need not be submitted to arbitration suffer from one common flaw: none of them addresses the language of the arbitration clause itself. That language was conspicuously noted and is very broad. The arbitration clause in Contract II applies to "[a]ny controversy or claim" relating to "any aspects of the relationship" between Hallmark and Cara's Notions. We will not interpret the phrase "any aspects of the relationship" to mean "only those aspects involving one store." The breadth of the language clearly establishes that the arbitration clause was intended to apply to all conflicts between the parties and not only to conflicts regarding Contract II in particular. Cf. CB Commercial Real Estate Group, Inc. v. Equity Partnerships Corp., 917 S.W.2d 641, 646 (Mo. Ct. App. 1996) ("When the language is unambiguous, the intent of the parties is reflected within the language of the contract and the court will determine the parties' intent from the four corners of the document itself."); Walton v. City of Raleigh, 467 S.E.2d 410, 411 (N.C. 1996) (same). Because the parties to Contract II are the litigants, the arbitration clause in Contract II applies to this suit between those parties.

_____

**5** The contracts specify that they are to be interpreted in accordance with Missouri law, where Hallmark Cards, Inc., is incorporated. The stores are located, and Cara's Notions is incorporated, in North Carolina. Because the applicable contract law is the same under either Missouri or North Carolina law, we need not decide which state's law must be applied to this case.

**6** Cara's Notions also argues that"Hallmark's present effort to creatively utilize the May 18, 1994 Hallmark Account Agreement [Contract II] to avoid the requirement that the 1990 account agreement [Contract I] for the University City store [Store I] can only be modified in writing is barred by the parol evidence rule" and that there was no consideration in Contract II to support an application of the arbitration clause to conflicts arising from Store I. Both arguments are meritless.

9

D.

Finally, even if the arbitration clause had been ambiguous as to its scope, our decision would be guided by the strong federal policy favoring arbitrability, based on the Arbitration Act and repeatedly recognized by the Supreme Court and this Circuit. In AT&T Technologies, Inc., the Supreme Court explained that presumption favoring arbitrability in the context of a labor dispute:

> Finally, it has been established that where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."

475 U.S. at 650 (quoting United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83 (1960)).

This policy is not limited to labor contracts. In Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614 (1985), the Supreme Court explained that when determining whether parties have agreed to arbitrate a dispute, a court is to apply the "federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act," id. at 626 (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)) (internal quotation marks omitted). The Supreme Court explained that:

> [T]hat body of law counsels "that questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration. . . . The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."

Id. (quoting Moses H. Cone Mem'l Hosp. , 460 U.S. at 24-25) (omission in original). "Thus, as with any other contract, the parties' inten-

10

tions control, but those intentions are generously construed as to issues of arbitrability." Id.; Summer Rain v. Donning Co./Publishers, Inc., 964 F.2d 1455, 1460 (4th Cir. 1992). These principles direct us to order arbitration here.

III.

The Appellee, Cara's Notions, argues that its claims should not be submitted to arbitration despite Mitsubishi's command. Cara's Notions may have the luxury of disagreeing with the Supreme Court, but that is a luxury denied to us. The district court should either have dismissed the case for lack of standing or granted Hallmark's Motion to Compel Arbitration and Motion for Stay of Proceeding Pending Arbitration. The district court's decision otherwise is hereby reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

REVERSED

11