Robert R. SUTTON, et al., Plaintiffs,

v.

HOLLYWOOD ENTERTAINMENT CORPORATION, Defendant.

Civ.A. No. AW–01–2416.

United States District Court,
D. Maryland,
Southern Division.

Jan. 24, 2002.

Jack Arthur Gold, Ronald A. Karp, Karp Frost Lapidus Wigodsky, Norwind, P.A., Washington, D.C., for plaintiffs.

Thomas Joseph Sawyer, McLean, VA, for defendants.

## MEMORANDUM OPINION

WILLIAMS, District Judge.

This case arises from claims of malicious prosecution; false imprisonment; negligent hiring, training, and supervision; loss of consortium; and punitive damages related to the arrest and detention of Plaintiff Robert R. Sutton when he visited a video store owned by Defendant Hollywood Entertainment Corporation ("Hollywood Video"). Pending before the Court are several motions. First, Defendant Hollywood Video moves to dismiss, or in the alternative, to stay litigation and compel arbitration [6–1; 6–2; 6–3]. In response, Plaintiffs Robert R. Sutton and Crystal Sutton ("Suttons") have filed a Motion for Leave to File Amended Complaint [10–1] and Motion to Remand [12–1]. Finally, Defendant Hollywood has filed a Motion to Withdraw or Strike An-swer and to Strike Appearance [15–1; 15–2], and a Motion to Amend [19–1]. The Court has carefully reviewed the pleadings and the applicable law and has determined that no hearing is necessary. See D.Md.R. 105(6).

For the reasons stated below, the Court denies Plaintiffs Motion for Leave to File Amended Complaint and Motion to Remand, and likewise denies Defendant's Motion to Dismiss, or in the Alternative, to Stay Litigation and to Compel Arbitration. In addition, the Court grants Defendant's Motion to Amend and grants in part and denies in part Defendant's Motion to Withdraw or Strike Answer and to Strike Appearance. Each motion is handled in turn below.

## BACKGROUND

Plaintiffs are adult citizens residing in Hyattsville, Maryland. Defendant Hollywood Video is an Oregon corporation licensed to do business in the State of Maryland. At all times relevant to the case, Defendant owned and operated a video rental store at 3601A East West Highway, Hyattsville, Maryland, and employed Mr. Tim Corbin.

On or about February 28, 2001, an unknown perpetrator stole merchandise from the Hyattsville Hollywood Video. Hollywood Video's employee, Mr. Corbin, allegedly witnessed the robbery and provided the Hyattsville police with a description of the perpetrator as a black male.

The following day, March 1, 2001, Plaintiff Robert Sutton, a black male, entered Hyattsville Hollywood Video. Upon observing Plaintiff Robert Sutton in the video store, Mr. Corbin called the Hyattsville police and reported that the perpetrator of the previous night's crime was once again in the store. As a result, Mr. Sutton alleges he was arrested, handcuffed, and searched in full view of store patrons. In

addition, Mr. Sutton alleges he was arrested and detained in the Hyattsville Police station and jail and released only after the police reviewed the surveillance tapes, which showed that Robert Sutton was not the same person as the perpetrator of the February 28, 2001 crime.

As a result of his arrest and detention, Plaintiff Robert Sutton brings claims of malicious prosecution; false imprisonment; and negligent hiring, training, and supervision. In addition, Plaintiffs Robert Sutton and Crystal Sutton, his wife, claim loss of consortium. For each of the above claims, Plaintiffs seek $1,000,000, plus interests and costs of this action. In addition, Plaintiffs Suttons claim punitive damages of $5,000,000, plus interest and costs of this action.

In July 2001 Plaintiffs brought suit in the Circuit Court for Prince George's County against Defendant Hollywood Video. On August 15, 2001, Defendant filed a Notice of Removal in this Court on diversity grounds pursuant to 28 U.S.C. § 1332 because Defendant is a business incorporated in Oregon with its principal place of business in Oregon, and Plaintiffs are residents of Maryland. Def.'s Notice of Removal at 2. On August 20, 2001, Defendant Hollywood Video filed its Motion to Dismiss or, in the Alternative, to Stay Litigation and Compel Arbitration. Subsequently, Plaintiffs filed a Motion to Amend in hopes of adding Mr. Corbin as a defendant and thereby destroying subject matter jurisdiction of this Court. Because lack of diversity jurisdiction would render the other pending motions moot, I will turn first to that motion.

### MOTION FOR LEAVE TO FILE AMENDED COMPLAINT AND MOTION TO REMAND

Pursuant to Federal Rule of Civil Procedure 15, Plaintiffs seek to add Mr. Timothy Corbin as a defendant in this suit. Mr. Corbin is the Hollywood Video employee who allegedly identified Plaintiff Sutton as a perpetrator of crime on the store and reported Mr. Sutton to the police. Plaintiffs also move that this Court remand the case back to state court and thereby avoid the question about the enforceability of the arbitration provision, which is argued by Defendant in its Motion to Dismiss, or in the Alternative, to Stay Litigation and to Compel Arbitration. *See* Pl.'s Mot. to Remand at 2. Defendant Hollywood Video opposes the motion for leave to amend the complaint on grounds that Plaintiffs seek to add Corbin solely for the purposes of destroying diversity jurisdiction.

28 U.S.C. § 1447(e) provides that "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." In determining whether or not to grant joinder of a defendant under section 1447(e), the decision is "committed to the sound discretion of the district court." *Mayes v. Rapoport,* 198 F.3d 457 (4th Cir. 1999). In exercising its discretion, a court looks to several factors, including " 'the extent to which the purpose of the amendment is to defeat federal jurisdiction, whether the plaintiff has been dilatory in asking for amendment, whether the plaintiff will be significantly injured if amendment is not allowed, and any other factors bearing on the equities.' " *Gum v. Gen. Elec. Co., et al.,* 5 F.Supp.2d 412, 414 (S.D.W.Va.1998) (quoting *Coley v. Dragon, Ltd.,* 138 F.R.D. 460 (E.D.Va.1990)).

Based on the above factors, I will deny Plaintiff's motions. In their motion for leave to amend, Plaintiffs contend that Defendant Hollywood Video has tried to

invoke an arbitration clause in order to prevent Plaintiffs from having their day in court. Pl.'s Mot. for Leave to File Am. Compl. at 2. Plaintiffs also note "so that [they] can have their day in court, they are adding Mr. Corbin as a proper party Defendant." *Id.* At the same time, Plaintiffs provide no substantive reasons for which they wish to join Mr. Corbin, except that Mr. Corbin identified Mr. Sutton to the police and therefore committed the underlying tort at issue in the action. *Id.* at 1–2. The timing of Plaintiffs' motions also suggests that they seek to avoid federal court jurisdiction. *See Mayes*, 198 F.3d at 463 ("Especially where, as here, a plaintiff seeks to add a nondiverse defendant immediately after removal but before any additional discovery has taken place, district courts should be wary that the amendment sought is for the specific purpose of avoiding federal jurisdiction."). Here, Plaintiffs filed their motion to amend shortly after removal and before discovery has occurred.

Because Plaintiffs' motions to add Corbin as a defendant appears to be solely for the purpose of destroying subject matter jurisdiction, the Court will deny Plaintiffs' Motion for Leave to File Amended Complaint. Likewise, the Court will deny Plaintiffs' Motion to Remand. This brings us to Defendant's Motion to Dismiss, or in the Alternative, to Stay Litigation and to Compel Arbitration.

### MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO STAY LITIGATION AND COMPEL ARBITRATION

Defendant's motion to dismiss or stay hinges on the contractual agreements between Defendant Hollywood and Plaintiffs Suttons. The Membership Applications, signed by both Plaintiffs, provide, in relevant part, that:

> Applicant agrees that any dispute arising out of or relating in any way to Applicant's relationship with HOLLYWOOD VIDEO shall be subject to final, non-appealable, binding arbitration under the auspices of the Arbitration Service of Portland, Inc. Exclusive venue for any dispute resolution shall be in Portland, Oregon and Oregon law shall control for all purposes (excluding choice of law). Applicant hereby consents to personal jurisdiction in the state of Oregon.

Def.'s Mot. to Dismiss or, in the Alternative, to Stay Litigation and Compel Arbitration, Exs. A, B.

■ Defendant Hollywood Video argues that based on the arbitration clause in the membership agreement, this Court should dismiss or stay the proceedings and compel arbitration. In construing the contract, however, Defendant[1] and Plaintiffs suggest that this Court could apply either the arbitration procedures under (1) section 3 of the Federal Arbitration Act, 9 U.S.C. §§ 3, 4, as a matter of federal policy, or (2) Oregon state law, Or.Rev. Stat. 36.315 (1999), because of the choice of law provision in the Membership Applications. *See* Def.'s Mot. to Dismiss or, in the Alternative, to Stay Litigation and Compel Arbitration at 1, n. 1; Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss or, in the Alternative, to Stay Litigation and Compel Arbitration at 4, n. 2.

---

1. In its motion to dismiss or stay, Defendant contends that either federal law or Oregon law could apply in construing the arbitration agreement. Def.'s Mot. to Dismiss or, in the Alternative, to Stay Litigation and Compel Arbitration at 1, n. 1. In its Reply to Plaintiff's opposition, however, Defendant adjusts its position and states that federal law applies. Def.'s Reply to Pl.'s Mem. in Opp'n to Motion to Dismiss, or in the Alternative, to Stay Litigation and Compel Arbitration at 1, n. 1.

■ Section 2 of the Federal Arbitration Act ("FAA") provides that:

"A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, ... shall be valid, irrevocable, and enforceable save upon such grounds as exist at law or in equity for the revocation of any contract."

9 U.S.C.A. § 2 (1999). Thus, the FAA provides a federal cause of action to enforce agreements within its scope, regardless of whether the underlying dispute depends solely on state law. *Whiteside v. Teltech Corp., et al.,* 940 F.2d 99, 101 (4th Cir.1991); *see also Long v. Silver,* 248 F.3d 309, 316 n. 1 (4th Cir.2001), *cert. denied,* —— U.S. ——, 122 S.Ct. 213, 151 L.Ed.2d 151 (2001) (noting that despite New York choice-of-law provisions contained in the contract at hand, federal law governs arbitrability of the claims). This cause of action embodies Congress's intent to "enforce private agreements into which parties had entered,' a concern which requires that [the Court] rigorously enforce agreements to arbitrate.'" *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc., et al.,* 473 U.S. 614, 625, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) (quoting *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 221, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985)). As a result, the Court will apply the FAA rather than Oregon state law.

■ The Fourth Circuit has provided guidance for district courts to determine whether it is proper to compel arbitration under the FAA. *See e.g., Whiteside,* 940 F.2d at 101–02. As stated in *Whiteside,* a claim to compel arbitration under the FAA requires that a party show: "(1) the existence of a dispute between the parties; (2) a written agreement that includes an arbitration provision which purports to cover the dispute; (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce; and (4) the failure, neglect or refusal of the [other party] to arbitrate the dispute." *Id.* at 102. An analysis of the facts of the present case to the *Whiteside* requirements demonstrates that the first, third,[2] and fourth factors are present. The question of whether the contract includes an arbitration agreement that covers the dispute is the crux of this matter, and I will address that issue now.

■ A district court determines whether to give effect to an arbitration agreement bearing in mind the "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). The FAA requires a "healthy regard for the federal policy favoring arbitration" and "establishes that, as a matter of federal

---

**2.** In its motion to dismiss or stay, Defendant notes that this "action falls under the FAA because it involves interstate commerce in that the purported events arise out of the business 'relationship' between Plaintiffs, who are from Maryland, and Hollywood, which is based in Oregon." Def.'s Mot. to Dismiss·or, in the Alternative, to Stay Litigation and Compel Arbitration at 1, n. 1.

The United States Supreme Court has given broad interpretation to the definition of "interstate commerce," as used in section 2 of the FAA. In *Allied–Bruce Terminix Cos., Inc. v. Dobson,* 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995), the Supreme Court interpreted "involving commerce" in section 2 to have a broad meaning that "signals an intent to exercise Congress' commerce power to the full." *Id.* at 277, 115 S.Ct. 834. Applying this broad interpretation, I find that the arbitration clause at issue deals with a relationship dealing with interstate commerce; thus, the third factor required for a claim to compel arbitration is established.

law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Id.* at 24–25, 103 S.Ct. 927. The strong federal policy favoring arbitration was intended to put arbitration agreements "on 'the same footing'" as other contractual agreements. *Allied–Bruce Terminix Cos., Inc. v. Dobson,* 513 U.S. 265, 275, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995) (quoting *Scherk v. Alberto–Culver Co.,* 417 U.S. 506, 511, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974)). As a result, courts should grant requests to arbitrate a dispute "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *United Steelworkers of Am. v. Warrior & Gulf Navigation,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960).

At the same time, the determination of "[w]hether a party has agreed to arbitrate an issue is a matter of contract interpretation: '[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.,* 96 F.3d 88, 91 (4th Cir.1996) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)). The Supreme Court reiterated this principle in its most recent pronouncement about the FAA. In *E.E.O.C. v. Waffle House, Inc.,* — U.S. —, 122 S.Ct. 754, — L.Ed.2d — (2002), the Court noted that "we do not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated. 'Arbitration under the [FAA] is a matter of consent, not coercion.'" *Id.* at 763 (quoting *Volt Info. Sci., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.,* 489 U.S. 468, 479, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989)).

The Fourth Circuit maintains that in order to find that "an arbitration agreement encompasses a dispute[,] a court must determine whether the factual allegations underlying the claim are within the scope of the arbitration clause, regardless of the legal label assigned to the claim." *J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, et al.,* 863 F.2d 315, 319 (4th Cir. 1988). This rule has taken the form of the "significant relationship" test, whereby a district court gives effect to an arbitration agreement that "embraces every dispute between the parties having a significant relationship to the contract regardless of the label attached to the dispute." *Id.* at 321; *Am. Recovery Corp.,* 96 F.3d at 93 (finding that a broad arbitration clause rendered all claims bearing a "significant relationship" to the parties' contract arbitrable).

In the case at hand, Defendant argues that the Plaintiffs' tort claims bear a significant relationship to the membership agreements they signed with Hollywood Video. I disagree. The Fourth Circuit cases relied on by Defendant can be distinguished. For example, in *Long v. Silver,* 248 F.3d 309 (4th Cir.2001), *cert. denied,* — U.S. —, 122 S.Ct. 213, 151 L.Ed.2d 151 (2001), the court vacated the magistrate judge's denial of a motion to compel arbitration. *Id.* at 312. The court found, *inter alia,* that the plaintiff's claim for frustration of reasonable expectations related to his continued employment, participation in management of the corporation, and payout for his shares derived directly from the employment and stock transfer agreements he signed with the defendant. *See id.* at 317–18. Both the employment and stock transfer contracts

contained broadly-worded arbitration clauses, and because the claim bore a significant relationship to the contracts, it was arbitrable. The court applied the same rationale to the plaintiff's other tort claims, including breach of fiduciary duties, breach of contract, failure to distribute profits properly, fraud, as well as punitive damages, and found that a significant relationship existed between those claims and the contracts. *Id.* at 318–20.

■ In our case, a significant relationship does not exist between the claims and the contract containing the arbitration clause. Unlike the situation in *Long*, here, Plaintiffs' tort claims do not bear a significant relationship to the contract between the parties—that is, the malicious prosecution; false imprisonment; negligent hiring, training, and supervision; loss of consortium; and punitive damages claims have

nothing whatsoever to do with the video rental contracts. Rather, the membership agreements deal solely with the movie rentals and are standardized form contracts to that end.[3] *See* Pl.'s Mem. in Opp'n to Def.'s Mot. at 3. Defendants argue that the term "relationship" in the arbitration agreement illustrates the broadness of the clause and likewise encompasses the torts alleged. *See* Def.'s Reply at 4–5. I believe, however, that despite the broadness of the clause, a more accurate reading of the term "relationship" refers to the customer's relationship, as a video renter, to Hollywood Video. In other words, the terms of the contract suggest that the parties are compelled to arbitrate matters related to matters such as the rental fees, repairs, replacements of videos. For example, logical claims to be

---

**3.** The "Terms and Conditions" portion of the membership applications states in full:

Applicant accepts full responsibility for and guarantees payment for all charges through the use of the membership card, including charges for products rented, all additional rental days for products kept past the initial due date, the cost of repair or replacement of any damaged products, any unpaid amounts owing caused by Applicant or any other person using Applicant's membership card, including the unauthorized use of Applicant's lost or stolen membership card until such time as applicant reports the membership card lost or stolen to HOLLYWOOD VIDEO, and reasonable legal fees, including those related to legal proceedings and any appeal therefrom. Applicant agrees HOLLYWOOD VIDEO may pursue all collection avenues and Applicant also authorized HOLLYWOOD VIDEO to prepare and submit credit charge slips, or submit payment requests electronically or otherwise, using any above listed charge card or secondary identification, to recover, without limitation, any charges and all other unpaid amounts due HOLLYWOOD VIDEO. Returned checks are subject to a $20.00 service charge. HOLLYWOOD VIDEO reserves the right, at any

time and without notice, to amend the Terms and Conditions of this Application. Applicant shall notify HOLLYWOOD VIDEO of a change of address, phone number or other information contained on this application at the time of each rental transaction.

Applicant agrees that any dispute arising out of or relating in any way to Applicant's relationship with HOLLYWOOD VIDEO shall be subject to final, non-appealable, binding arbitration under the auspices of the Arbitration Service of Portland, Inc. Exclusive venue for any dispute resolution shall be in Portland, Oregon and Oregon law shall control for all purposes (excluding choice of law).

Applicant hereby consents to personal jurisdiction in the state of Oregon. APPLICANT ACKNOWLEDGES THAT THIS ARBITRATION PROVISION CONSTITUTES A WAIVER OF ANY RIGHT TO A JURY TRIAL. Any arbitration award may be registered in Mulnomah County Circuit Court in the state of Oregon for entry of judgment. Applicant acknowledges by Applicant's signature below that Applicant has read and understands the terms and conditions of this Application.

Def.'s Mot. to Dismiss or, in the Alter., to Stay Litigation and Compel Arbitration, Exs. A, B.

arbitrated might include matters such as a dispute over dishonored checks written by the customer or destruction of rented videos by the customer. By contrast, however, claims such as those alleged here—malicious prosecution, false imprisonment, etc.—are completely independent of, let alone significantly related to, the membership agreements for video rentals.

Defendant also relies on *Cara's Notions, Inc. v. Hallmark Cards, Inc.*, 140 F.3d 566 (4th Cir.1998), in which the Fourth Circuit reversed the district court on the grounds that the lower court failed to consider the actual contract language and did not adhere to the federal policy favoring arbitration. *Id.* At 567. In *Cara's Notions*, two contracts were at issue between Hallmark and the retailer-plaintiff. The first contract did not contain an arbitration clause, but the second contract did. *Id.* at 568. The district court found that only the first contract applied to the dispute and that the arbitration clause of the second agreement was inapplicable. *Id.* at 569. The court of appeals disagreed, however, and held that the broad arbitration clause of the second contract controlled. *Id.*

Again, the fact pattern in *Cara's Notions* is distinct from ours. In that case, both parties were sophisticated business entities, and similar to the *Long* case, the claims for breach of good faith and fair dealing, unfair and deceptive trade practices, usurpation of corporate opportunity derived directly from the second contract between the parties and thus bore a significant relationship to the contract. In our case, Plaintiffs were consumers signing what they believed to be a mere video rental contract. As noted above, their claims against Defendant do not derive from the video rental agreement; rather, they result from his walking into the store the night following the perpetration of a crime by another person. It is logically untenable that from the customers' point-of-view, the membership agreements were meant to cover interactions with store employees and accusations of theft. Taken to an extreme, Defendant's reading of the arbitration clause would require arbitration of claims such as a Hollywood Video store ceiling falling in on customers, a Hollywood Video store employee brutally attacking a customer, or a Hollywood Video vehicle striking and killing a pedestrian who has signed a membership agreement. *See* Pl.'s Mem. in Opp'n to Def.'s Mot. at 5, n. 3.

Applying the "significant relationship" test to the facts of our case, I find that Plaintiff's claims do not bear a significant relationship to the video store membership agreement. Thus, the arbitration clause does not cover the dispute at issue, and the claims are not properly stayed in favor of arbitration under the FAA.

### DEFENDANT'S MOTION TO AMEND

The final motions to consider are Defendant's Motion to Withdraw or Strike Answer and to Strike Appearance filed in state court and its Motion to Amend filed in this Court. On September 7, 2001, attorney Austin W. Brizendine, Jr. filed in state court a Motion to Withdraw or Strike Answer and to Strike Appearance. In this motion, Mr. Brizendine requests that the state court strike his appearance and strike the Answer he filed on grounds that he responded to the Complaint as requested by Defendant's insurance carrier, but without the authority of Defendant. Def.'s Mot. to Withdraw or Strike Answer at 1–2, *Sutton v. Hollywood Entm't Corp.* (Cir.Ct. Prince George's Co.2001) (No. CAL 01–15487). Unbeknownst to Mr. Brizendine, the matter had been referred by Defendant to the law firm of Womble, Carlyle, Sandridge & Rice ("Womble, Carlyle"), which in turn removed the case to federal

court and filed an Answer on behalf of Defendant. *Id.* at 2. As a result, two Answers were filed on behalf of Defendant—one which was authorized in federal court and one which was unauthorized in state court.

■ Defendant, represented by Womble, Carylyle, files a Motion to Amend requesting that the Court deem the Answer of Defendant Hollywood Entertainment Corporation, filed on August 20, 2001, to be an amendment of the prior answer filed in state court by Mr. Brizendine. Acknowledging that Mr. Brizendine's Answer was unauthorized by Defendant, Defendant now posits that allowing its amendment will allow the matter to proceed without interruption or delay as to other pending matters. Def.'s Mot. to Amend at 3.

■ Pursuant to Federal Rule of Civil Procedure 15, leave to amend "shall be freely given when justice so requires." Further, such leave should be granted unless the amendment would cause undue prejudice or undue delay to the nonmoving party, or unless the motion was filed with an improper motive or in bad faith. *See Diggs v. Housing Auth.,* 67 F.Supp.2d 522, 529 (D.Md.1999) (citing *Medigen of Ky. v. Publ. Serv. Comm'n of W.V.,* 985 F.2d 164, 167–68 (4th Cir.1993)). Under this standard, the Court will grant the Motion to Amend. The amendment will help facilitate the proceedings and will not cause undue prejudice or delay to Plaintiffs. As for Defendant's first motion, submitted by Mr. Brizendine in state court, the Court will grant the motion to allow Mr. Brizendine to withdraw as counsel, but will deny as moot the request to withdraw or strike the Answer he filed.

### CONCLUSION

For the above reasons, the Court denies Plaintiffs Motion for Leave to File Amend-

ed Complaint and Motion to Remand, and likewise denies Defendant's Motion to Dismiss, or in the Alternative, to Stay Litigation and to Compel Arbitration. In addition, the Court grants Defendant's Motion to Amend and grants in part and denies in part Defendant's Motion to Withdraw or Strike Answer and to Strike Appearance. An Order consistent with this Memorandum Opinion will follow.

### ORDER

For the reasons stated in the accompanying Memorandum Opinion, IT IS this 24th day of January, 2002, by the United States District Court for the District of Maryland, **ORDERED:**

1. That Plaintiffs' Motion for Leave to File Amended Complaint [10–1] BE, and the same hereby is **DENIED;**

2. That Plaintiffs' Motion to Remand to Circuit Court for Prince George's County [12–1] BE, and the same hereby is **DENIED;**

3. That Defendant's Motion to Dismiss [6–1], or in the Alternative, to Stay [6–2] Litigation and to Compel Arbitration [6–3] BE, and the same hereby is **DENIED;**

4. That Defendant's Motion to Amend [19–1] BE, and the same hereby is, **GRANTED;**

5. That Defendant's Motion to Withdraw or to Strike Answer [15–1] BE, and the same hereby is **DENIED AS MOOT,** AND Defendant's Motion to Strike Appearance [15–2] BE, and the same hereby is **GRANTED;** and

6. That the Clerk of the Court mail copies of this Memorandum Opinion and Order to all counsel of record.