**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

**No. 14-2170**

———————————

GREENVILLE HOSPITAL SYSTEM,

        Plaintiff - Appellant,

    v.

EMPLOYEE WELFARE BENEFIT PLAN FOR EMPLOYEES OF HAZELHURST
MANAGEMENT COMPANY, Underwritten by Aetna Life Insurance
Company,

        Defendant - Appellee.

———————————

Appeal from the United States District Court for the District of
South Carolina, at Greenville.  Timothy M. Cain, District Judge.
(6:14-cv-01919-TMC)

———————————

Argued:  September 15, 2015      Decided:  October 13, 2015

———————————

Before KING and HARRIS, Circuit Judges, and George Jarrod HAZEL,
United States District Judge for the District of Maryland,
sitting by designation.

———————————

Affirmed by unpublished opinion.  Judge Harris wrote the
opinion, in which Judge King and Judge Hazel joined.

———————————

**ARGUED**:  Linda C. Garrett, LADDAGA – GARRETT, P.A., North
Charleston, South Carolina, for Appellant.  Deborah Whittle
Durban, NELSON MULLINS RILEY & SCARBOROUGH, LLP, Columbia, South
Carolina, for Appellee. **ON BRIEF**:  William C. Wood, Jr., NELSON
MULLINS RILEY & SCARBOROUGH, LLP, Columbia, South Carolina, for
Appellee.

———————————

Unpublished opinions are not binding precedent in this circuit.

PAMELA HARRIS, Circuit Judge:

Greenville Hospital System ("Greenville") and Aetna Health Management, LLC ("Aetna") entered into an agreement (the "Agreement") under which Greenville provides hospital services to patients covered by Aetna insurance plans and then submits claims directly to Aetna for payment. This case arose when Aetna denied payment of a claim on the ground that Greenville had not complied with Aetna's "precertification" requirements, as mandated by the Agreement.

The Agreement also includes an arbitration clause, providing for binding arbitration of "[a]ny controversy or claim arising out of or relating to" the Agreement. The district court held that Greenville's dispute with Aetna over payment of its claim relates to the parties' Agreement, and is thus covered by the arbitration clause. We agree, and affirm the district court's dismissal of this case.

**I.**

**A.**

Greenville, a provider of health-care services, and Aetna, an insurer, entered into their Agreement in 2004. Under the Agreement, Greenville bills Aetna directly for the services it provides to patients insured by Aetna-administered plans, and Aetna pays those claims at rates established by the Agreement.

3

In most circumstances, Greenville may not seek reimbursement directly from patients, even if Aetna denies payment on their claims. The Agreement requires Greenville to facilitate this direct-billing process by obtaining assignments of patients' rights to be reimbursed for health services under their insurance plans.

Two provisions of the Agreement are of particular relevance here. First, under paragraph 5.1 of the Agreement, Greenville generally must obtain "precertification" from Aetna before the provision of services, as detailed in patients' insurance plans, and give Aetna notice before admissions for inpatient care. Specifically, paragraph 5.1 provides:

> Except when a [patient] requires Emergency Services, [Greenville] agrees to comply with any applicable precertification and/or referral requirements under the [patient's] Plan prior to the provision of Hospital Services [and] . . . to notify [Aetna] within two (2) business days, or as soon as reasonably possible of all admissions of [patients], and of all services for which [Aetna] requires notice.

J.A. 19.

Second, of course, is the Agreement's arbitration clause. The Agreement sets out in some detail how Greenville and Aetna are to resolve disputes, beginning with Greenville's participation in Aetna's internal grievance procedure and continuing with mediation. And in the event that mediation is

4

unsuccessful, "either party may submit the dispute to binding arbitration." J.A. 25. As set out in the Agreement:

> <u>Any controversy or claim arising out of or relating to this Agreement</u> or the breach, termination, or validity thereof, except for temporary, preliminary, or permanent injunctive relief or any other form of equitable relief, shall be settled by binding arbitration administered by the American Arbitration Association ("AAA") and conducted by a sole Arbitrator ("Arbitrator") in accordance with the AAA's Commercial Arbitration Rules ("Rules").

<u>Id.</u> (emphasis added). Emphasizing the importance of the arbitration provision, the top of every page of the Agreement contains the following statement, in bold lettering:

> **NOTICE: THIS AGREEMENT IS SUBJECT TO MANDATORY ARBITRATION PURSUANT TO THE FEDERAL ARBITRATION ACT OR, IF THE FEDERAL ARBITRATION ACT IS DETERMINED TO BE INAPPLICABLE, THE UNIFORM ARBITRATION ACT, § 15-48-10, ET[] SEQ., CODE OF LAWS OF SOUTH CAROLINA (1976), AS AMENDED.**

J.A. 10–29.

## B.

The dispute at issue here arose in August of 2011, when Greenville treated a minor child.[1] The patient's father worked for Hazelhurst Management Company ("Hazelhurst"), so the patient was a beneficiary of an employee insurance plan established by

---

[1] Greenville alleges these facts in its complaint. In considering a motion to dismiss, we "accept as true all well-pleaded allegations." <u>Mylan Labs., Inc. v. Matkari</u>, 7 F.3d 1130, 1134 (4th Cir. 1993).

5

Hazelhurst and fully insured by Aetna (the "Plan").[2] As contemplated by the Agreement, Greenville obtained from the patient's mother an assignment of the patient's Plan benefits, so that Greenville could submit claims for those benefits to Aetna. Greenville began treating the patient on an outpatient basis, but at some point admitted the patient to the hospital for inpatient care.

After discharging the patient, Greenville submitted a claim for benefits to Aetna. Aetna denied the claim for failure to comply with precertification requirements, explaining that "pre-certification/authorization [was] not received in a timely fashion." It is that denial that Greenville alleges to be unreasonable under the Plan. Greenville also claims that it requested from Aetna a copy of Plan documents related to the dispute on March 15, 2012, and that Aetna did not provide those documents until March 11, 2014.

## C.

After unsuccessfully appealing the denial of its claim through Aetna's internal grievance process, in May of 2014

[2] The corporate entity that insures the Plan is Aetna Life Insurance Company. The Parties do not dispute that Aetna Life Insurance Company is covered by the Agreement, which extends to all affiliates of Aetna Health Management, LLC, and like the parties, we use "Aetna" to refer to both.

Greenville filed suit against the Plan in the District of South Carolina. It brought two derivative claims as the assignee of a Plan beneficiary: one for failure to pay benefits and one for failure to provide Plan documents in a timely manner. Aetna, as the Plan's underwriter, moved to compel arbitration and to dismiss the suit, arguing that the Agreement's arbitration clause governed the parties' dispute.

The district court agreed. Greenville filed its claim pursuant to the Agreement, it reasoned, and Aetna denied that claim under the Agreement, based on Greenville's obligation to comply with Plan precertification requirements. That is enough, it held, to show that Greenville's claims to payment are "related" to the Agreement, particularly under the federal-law presumption in favor of a broad construction of arbitration agreements. Greenville Hosp. Sys. v. Emp. Welfare Benefits Plan, C/A No. 6:14-1919-TMC, 2014 WL 4976588, at *4 (D.S.C. Oct. 3, 2014). Accordingly, the district court granted Aetna's motion to compel arbitration and to dismiss. Id. at *5. This timely appeal followed.

7

## II.

### A.

We review the district court's arbitrability determination de novo. Cara's Notions, Inc. v. Hallmark Cards, Inc., 140 F.3d 566, 569 (4th Cir. 1998).

As the district court recognized, our evaluation of the Agreement's arbitration clause is guided by the "federal policy favoring arbitration" established by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq. (2012). Adkins v. Labor Ready, Inc., 303 F.3d 496, 500 (4th Cir. 2002) (quoting Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ., 489 U.S. 468, 475–76 (1989)). We must construe the arbitration clause broadly, resolving any "ambiguities as to [its] scope" in favor of arbitration. Id. Put differently, where the parties have agreed to an arbitration clause, a court should order arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582–83 (1960). If a court determines, after applying this presumption in favor of arbitration, that all of the issues presented are arbitrable, then it may dismiss the case, as the district court did here. Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc., 252 F.3d 707, 709–10 (4th Cir. 2001).

**B.**

We begin with the language of the arbitration clause, which extends to "[a]ny controversy or claim arising out of or relating to" the Agreement. As we have recognized before, the "arising out of or relating to" formulation is a broad one, "capable of an expansive reach." Am. Recovery Corp. v. Computerized Thermal Imaging, Inc., 96 F.3d 88, 93 (4th Cir. 1996) (citing Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 398 (1967)). Such a clause "does not limit arbitration to the literal interpretation or performance of the contract. It embraces every dispute between the parties having a significant relationship to the contract regardless of the label attached to the dispute." J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A., 863 F.2d 315, 321 (4th Cir. 1988) (interpreting arbitration clause covering all disputes "arising in connection" with the agreement). Even before we apply the presumption in favor of arbitration, in other words, we start here with a particularly comprehensive agreement to arbitrate.

On its face, that agreement to arbitrate plainly extends to Greenville's claims against Aetna. Whether Greenville is entitled to payment from Aetna will turn on whether Greenville complied with applicable precertification requirements, and, if not, the appropriate penalty for that failure. The source of Greenville's obligation to comply with precertification

9

requirements is the Agreement, paragraph 5.1 of which requires Greenville to follow "any applicable precertification and/or referral requirements under the [patient's] Plan." It follows, as the district court concluded, that the dispute here has a "significant relationship" to the Agreement, J.J. Ryan & Sons, 863 F.2d at 321, which is all that is needed to bring it within the scope of the arbitration clause.

Greenville's primary argument is that because its claim cannot be resolved by the terms of the Agreement alone, and will instead require reference to the precertification rules of the patient's insurance Plan, it does not "aris[e] out of or relat[e] to" the Agreement. We disagree. We have no quarrel with the premise of Greenville's argument: Under paragraph 5.1 of the Agreement, the particular precertification rules that apply in a given case will be elaborated by a patient's insurance plan. But it does not follow that a dispute over precertification does not "relate" to the Agreement as well, given that it is the Agreement that obliges Greenville to adhere to precertification protocols at all.

In support of its argument, Greenville relies primarily on out-of-circuit cases considering whether certain claims involving health-care agreements arise under the Employee Retirement Income Security Act of 1974 ("ERISA"), rather than state contract law, for purposes of federal question

10

jurisdiction and preemption. In Lone Star OB/GYN Associates v. Aetna Health Inc., for instance, the Fifth Circuit held that disputes over a "right to payment" require determinations under individual insurance plans covered by ERISA, whereas disputes regarding the appropriate "rate of payment" call only for interpretation of provider agreements that fall outside ERISA's scope and so may be heard in state court. 579 F.3d 525, 530 (5th Cir. 2009).[3] According to Greenville, its claim falls on the "right to payment" side of the line, and thus arises under the patient's insurance plan rather than under its provider agreement with Aetna.

We may assume the validity of Greenville's premise here — that its precertification dispute with Aetna would be treated as a "right to payment" dispute arising under ERISA by Lone Star and similar cases. But that does not mean that its dispute does not also "relate to" the Agreement between Greenville and Aetna, under the terms of the arbitration clause. The question in cases like Lone Star is whether a claim has any connection to an

---

[3] Other circuits have used the same distinction between "right to payment" and "rate of payment" claims to determine whether ERISA applies. See, e.g., Montefiore Med. Ctr. v. Teamsters Local 272, 642 F.3d 321, 331 (2d Cir. 2011); Conn. State Dental Ass'n v. Anthem Health Plans, Inc., 591 F.3d 1337, 1350 (11th Cir. 2009); Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan, 388 F.3d 393, 403–04 (3d Cir. 2004); Blue Cross v. Anesthesia Care Assocs. Med. Grp., Inc., 187 F.3d 1045, 1051 (9th Cir. 1999).

11

ERISA-covered insurance plan, for purposes of establishing federal jurisdiction, or whether it instead arises exclusively under a provider agreement like the Agreement here. See 579 F.3d at 530-31. The arbitration clause, on the other hand, is not limited to claims that arise exclusively — or indeed, "arise" at all — under the Agreement; instead, it extends to any claim "arising out of or relating to" the Agreement. Whether or not Greenville's precertification dispute with Aetna "arises out of" the Agreement, it clearly "relates to" Greenville's commitment under that Agreement to abide by Aetna's precertification rules.

We are similarly unpersuaded by Greenville's second argument: that the arbitration clause does not apply because Greenville is bringing derivative, rather than direct, claims against Aetna. The claims in this case originated with a patient, before Greenville, consistent with its Agreement with Aetna, obtained an assignment of those claims from the patient's mother. Because the arbitration clause would not bind the patient in a suit against Aetna, Greenville argues, it also should not bind Greenville when it steps into the shoes of that patient to sue on his claim.

We disagree. Nothing about the arbitration clause suggests that it is intended to exclude from its scope claims that otherwise "aris[e] out of or relat[e] to" the Agreement solely

12

because they rest on assignments. On the contrary: The Agreement's direct-payment system expressly contemplates assignment, obligating Greenville to "obtain[] signed assignments of benefits authorizing payment for Hospital Services to be made directly to [Greenville]." J.A. 17. Assignment is what the parties bargained for when they entered into the Agreement, including its arbitration clause, and the derivative nature of a claim does not preclude it from "relating to" the Agreement.[4] At a minimum, the arbitration clause is "susceptible of an interpretation that covers" derivative claims, United Steelworkers, 363 U.S. at 582–83, and under the presumption in favor of arbitration, that is enough for us to conclude that it governs this dispute.

---

[4] Our analysis is consistent with CardioNet, Inc. v. Cigna Health Corp., 751 F.3d 165 (3d Cir. 2014), on which Greenville principally relies. There, the Third Circuit considered a provider-agreement arbitration clause limited to disputes over "the performance or interpretation of the Agreement." Id. at 173. The court held that this clause did not reach derivative claims but expressly acknowledged that a different arbitration clause might, if the clause "intimat[ed] that the parties intended to arbitrate such claims." Id. at 179. The arbitration clause in front of us is significantly broader than the one at issue in CardioNet, and the Agreement to which it refers specifically provides for the assignment of claims. Under those circumstances, and given both parties' level of sophistication, cf. Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 597–98 (1991) (Stevens, J., dissenting), we conclude that Greenville had ample notice that its assigned claims would be subject to arbitration to the extent they arose under or related to the Agreement.

### III.

For the reasons set forth above we affirm the decision of the district court in all respects.

AFFIRMED