Green v. Short, 2007 NCBC 8

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
06 CVS 22085

| | | |
|---|---|---|
| JOHN K. GREEN, individually and on behalf of ASIA APPAREL COMPANY, LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | **ORDER** |
| ROBERT WAYNE SHORT, AMERITEX APPAREL CORPORATION, and/or AMERITEX APPAREL CORP., AMERITEX APPAREL CO., LTD., and/or AMERITEX APPAREL CORPORATION, LTD. | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

*Gray, Layton, Kersh, Solomon, Sigmon, Furr & Smith, P.A., by Ted F. Mitchell and William E. Moore, Jr. for Plaintiff John K. Green, individually and on behalf of Asia Apparel Company, LLC.*

*Bishop, Capitano & Moss, P.A. by J. Daniel Bishop for Defendants Robert Wayne Short, Ameritex Apparel Corporation, and/or Ameritex Apparel Corp., Ameritex Apparel Co. Ltd., and/or Ameritex Apparel Corporation, Ltd.*

Diaz, Judge.

{1}    The Court heard this matter on 28 February 2007 on the following Motions:  (1) Plaintiff's Motion for Entry of Default, and (2) Defendants' Motion to Stay and Compel Arbitration.

{2}    After considering the Court file, the written Motions and supporting materials, the briefs of the parties, and the arguments of counsel, the Court **DENIES** Plaintiff's Motion for Entry of Default and **GRANTS** Defendants' Motion to Stay and Compel Arbitration.

# I.

## FACTS

### A.

### THE PARTIES

{3}     Plaintiff John K. Green ("Green") is a resident of Mecklenburg County, North Carolina. (Am. Compl. ¶ 1.) Green purports to bring individual claims in this action, as well as derivative claims on behalf of Asia Apparel Company, LLC ("Asia Apparel" or the "Company"). (Am. Compl. ¶ 3.)

{4}     Asia Apparel is a limited liability company organized under North Carolina law with its principal place of business in Mecklenburg County, North Carolina. (Am. Compl. ¶ 2.)

{5}     Green alleges that Defendant Robert Wayne Short ("Short") is a resident of Mecklenburg County, North Carolina. (Am. Compl. ¶ 4.)

{6}     According to Green, Defendant Ameritex Apparel Corporation and/or Ameritex Apparel Corp. is a California corporation wholly owned by Short. (Am. Compl. ¶ 5.) Green further alleges that Defendant Ameritex Apparel Co., Ltd. and/or Ameritex Apparel Corporation, Ltd. is a foreign corporation that is wholly owned by Short and operated as a branch of Defendant Ameritex Apparel Corporation. (Am. Compl. ¶ 6.) The Court will hereafter refer to these entities as the "Ameritex Companies."

### B.

### THE PLEADINGS AND OTHER FILINGS

2

{7}     On or about 13 November 2006, Green filed a Verified Complaint (the "Complaint") in this case.  Green served Defendants Short and Ameritex Apparel Corporation with the Complaint on or about 17 November 2006.

{8}     On or about 15 December 2006, Defendants Short and Ameritex Apparel Corporation filed a notice designating this matter as a mandatory complex business case pursuant to N.C.G.S. § 7A-45.4 (2006).  They also sought and obtained a 30-day extension of time to serve a responsive pleading, up to and including 17 January 2007.

{9}     On 18 December 2006, the Chief Justice of the North Carolina Supreme Court designated the case as complex business, and the matter was assigned to me.

{10}    On 23 January 2007, Defendants filed a Motion to Stay and Compel Arbitration (the "Motion to Arbitrate") pursuant to the Federal Arbitration Act (the "FAA"), 9 U.S.C.S. §§ 1-16 (2006).

{11}    Green filed a response to the Motion to Arbitrate on 6 February 2007.

{12}    On 16 February 2007, the Defendants filed their reply.  Defendants also moved for an immediate interim stay of the action to avoid a threatened entry of default by Green.

{13}    That same day, the Court notified the parties that it would take no action on the request for an immediate interim stay, but I directed Green to file any request for entry of default for action by me and not the Clerk.[1]

{14}    On 28 February 2007, Green filed a Motion for Entry of Default, which was accompanied by an Amended Complaint filed as of right pursuant to Rule 15(a) of the North Carolina Rules of Civil Procedure.[2]  Although Green failed to attach a certificate of service to this new pleading

---

[1] *See generally Hasty v. Carpenter*, 51 N.C. App. 333, 276 S.E.2d 513 (1981) (holding that a trial court has concurrent jurisdiction with the clerk for purposes of entry of default).
[2] Among other things, the Amended Complaint added (1) Ameritex Apparel Co., Ltd. and/or Ameritex Apparel Corporation, Ltd. as a defendant, and (2) a new claim for constructive trust.

(and also failed to attach the exhibits referenced therein), the Court's docket shows that Green electronically served the Amended Complaint on counsel for Short and Ameritex Apparel Corporation on 28 February 2007.

## C.

## THE CLAIMS

{15}    On or about 17 July 2000, Green and Short formed Asia Apparel for the purpose of importing textile goods from overseas and distributing them to retailers throughout the United States.  (Am. Compl. ¶ 7; Short Aff. ¶ 3.)

{16}    On that same date, the parties executed an Operating Agreement that, among other things, named Green as a member and Short and Nolan Mills ("Mills") as member/managers of the Company.  (Compl. Ex. D Schedule A.)

{17}    The Operating Agreement appointed Short the Company's President and Mills the Company's Vice-President, (Compl. Ex. D § 4.1), and also delineated their duties and responsibilities.  (Compl. Ex. D. §§ 3.1-3.7.)

{18}    Green alleges that Mills was discharged as a manager of Asia Apparel and that his investment in the Company was redeemed on 22 May 2002.  (Am. Compl. ¶ 20.)

{19}    Short continues to serve as President and Manager of the Company.  (Am. Compl. ¶ 4.)

{20}    The Amended Complaint alleges that:

> (1) The Ameritex Companies were formed, at least in part, to provide resources for the production of goods to be distributed by the Company, (Am. Compl. ¶ 9);
>
> (2) Short misrepresented his financial *bona fides*, as well as those of the Ameritex Companies, and made other false representations regarding the Defendants' ability to meet Asia Apparel's business needs, (Am. Compl. ¶¶ 9-11);

4

(3) Short's "misinformation and false representations induced Plaintiff Green to enter into business with Defendant Short and to continue investing in Asia Apparel after its creation," (Am. Compl ¶ 13);

(4) Green invested, either directly or indirectly, $2.7 million in the Company, (Am. Compl. ¶ 14);

(5) Short has (a) refused to appear at duly noticed member meetings, (b) ignored requests from Green that he be named a manager of the Company, (c) refused to allow Green access to Asia Apparel's books and records, and (d) generally acted in a manner contrary to the best interests of the Company, (Am. Compl. ¶¶ 20, 22-25); and

(6)  The Ameritex Companies are nothing more than the "alter ego and corporate shell for Defendant Short, into which said Defendant has wrongfully and unfairly diverted profits from Asia Apparel," (Am. Compl. ¶ 66).

{21}   The Amended Complaint prays for (1) preliminary and permanent injunctive relief, including the appointment of a receiver, (2) an accounting of Asia Apparel's assets, (3) redemption of Green's shares or, alternatively, dissolution of Asia Apparel, (4) a declaratory judgment as to the parties' ownership rights in the Company, and (5) a constructive trust on all funds in the hands of Ameritex and other unspecified third parties.  (Am. Compl. Prayer for Relief.)

{22}   Green also seeks compensatory, punitive, and statutory treble damages for (1) breach of fiduciary duty, (2) breach of contract, (3) fraud, (4) common law breach of fiduciary duty, (5) constructive fraud, (6) unfair and deceptive trade practices, (7) unjust enrichment, and (8) conversion.  (Am. Compl. ¶¶ 31-125.)

## D.

## THE OPERATING AGREEMENT

{23}  The cover page of the Operating Agreement states, in bold type, "**THIS AGREEMENT IS SUBJECT TO ARBITRATION.**"  (Compl. Ex. D 1.)  As to the scope of the arbitration clause, the agreement provides:

> *Arbitration.*  Except as otherwise provided herein, any controversy or claim arising out of or relating to this Agreement, or to the interpretation, breach or enforcement thereof, shall be submitted to arbitration in Charlotte, North Carolina, in a manner agreed upon by the parties then in interest, or in default of such agreement, in accordance with the commercial rules of the American Arbitration Association.  Notwithstanding the foregoing, there shall be no arbitration with respect to the appraisers' determination hereunder of the fair market value of the Company, since such determination is final and conclusive on all parties.

(Compl. Ex. D § 12.14.)[3]

{24}  The Operating Agreement also provides that the Company will be dissolved upon the happening of any one of a number of events, including "[t]he entry of a decree of judicial dissolution or the issuance of a certificate for administrative dissolution under the [North Carolina Limited Liability Company Act]."  (Compl. Ex. D § 11.1(e).)

{25}  Finally, the Operating Agreement describes how members may obtain access to the Company's records or demand an audit of the Company's books of account.  (Compl. Ex. D, § 12.1.)

{26}  The Amended Complaint concedes that arbitration is appropriate pursuant to the Operating Agreement, but only as to the claims lodged against Short, and then only after the Court rules on Green's request for interim equitable relief.  (Am. Compl. ¶ 36.)

## II.

## CONCLUSIONS OF LAW

### A.

---

[3] The Operating Agreement provides for the use of one or more appraisers to determine the Company's market value where:  (1) the members fail to agree on a value, and (2) such a valuation becomes necessary for purposes of addressing a "Buy-Sell" event leading to the withdrawal of a member.  (Compl. Ex. D § 10.)

**PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT**

{27} Green asserts that he is entitled to entry of default as to Defendants Short and Ameritex Apparel Corporation because they did not file a timely responsive pleading to his original Complaint. (*See* Mot. for Entry of Default.) The Court disagrees.

{28} Where a plaintiff amends his complaint as of right, a defendant has thirty days from the date of service of that amended pleading to serve an answer. *Hyder v. Dergance*, 76 N.C. App. 317, 319, 332 S.E.2d 713, 714 (1985). This is so even where, as here, a defendant has not otherwise served a timely pleading to the original complaint. *Id.*

{29} In *Hyder*, the plaintiff filed his complaint on 26 July 1984. Before the defendants answered, and without leave of court, the plaintiff filed an amended complaint on 29 August 1984. On 7 September 1984, the clerk entered default judgment against the defendants. The defendants answered the amended complaint on 22 September 1984 and thereafter moved to set aside the default. The trial court denied the motion. *Id.* at 318, 332 S.E.2d at 713-14.

{30} The Court of Appeals reversed. The court reasoned that because the defendants' answer "was filed within 30 days of the amended complaint, it was timely" and the trial court erred as a matter of law in refusing to set aside the default. *Id.* at 320, 332 S.E.2d at 715.

{31} The facts of this case are not distinguishable in any meaningful way from *Hyder*. Because Green amended his Complaint on 28 February 2007, the Defendants' time to serve a responsive pleading has not expired. Accordingly, the Court **DENIES** Plaintiff's Motion for Entry of Default.

## B.

## DEFENDANTS' MOTION TO STAY AND COMPEL ARBITRATION

{32}   Defendants move to compel arbitration of this dispute and for a corresponding stay.  The Court **GRANTS** the motion.

**1.**

**GOVERNING LAW**

{33}   Defendants assert that the FAA, 9 U.S.C.S. §§ 1-16 (2006), applies to the question before me; Green skips over this issue.  The court may not ignore the question, however, because the FAA "preempts conflicting state law" on the subject of arbitration.  *WMS, Inc., v. Weaver*, 166 N.C. App. 352, 357-58, 602 S.E.2d 706, 710 (2004).

{34}   The FAA governs any "contract evidencing a transaction involving commerce."  9 U.S.C.S. § 2 (2006).  Commerce under the FAA is defined broadly as:

> commerce among the several States or with foreign nations, or in any Territory of the United States or in the District of Columbia, or between any such Territory and another, or between any such Territory and any State or foreign nation, or between the District of Columbia and any State or Territory or foreign nation . . . .

9 U.S.C.S. § 1 (2006).

{35}   Given the undisputed evidence that "the business of Asia Apparel is to import textile goods from overseas and to distribute them to retailers throughout the United States," (Short Aff. ¶ 3), and that the Company has engaged regularly in this business since its inception such that, in 2006, its gross sales totaled over $7.4 million, (Short Aff. ¶ 4), I conclude that the FAA applies to the interpretation of the arbitration clause in the Operating Agreement.

**2.**

**THE SCOPE OF THE ARBITRATION AGREEMENT**

{36}   In an unusual twist, all parties in this case have requested arbitration.  They diverge, however, on the timing and scope of the arbitration, and the parties that may demand it.

{37}    Defendants argue that arbitration is appropriate as to all parties and issues, including Green's requests for interim equitable relief and for dissolution.  (*See* Mot. to Stay and Compel Arbitration.)  Green is unwilling to go so far, asserting that:  (1) only the signatories to the Operating Agreement may insist on arbitration, (2) an arbitrator may not consider Green's claim for dissolution, and (3) arbitration of the remaining claims must await the Court's consideration of Green's request for interim equitable relief.  (*See* Resp. to Mot. to Stay and Compel Arbitration.)

{38}    Whether a dispute is subject to arbitration is a question of law for the Court.  *Raspet v. Buck*, 147 N.C. App. 133, 136, 554 S.E.2d 676, 678 (2001).[4]  As to this question, the Court considers:  (1) whether the parties had a valid agreement to arbitrate, and (2) whether the specific dispute between the parties falls within the substantive scope of their agreement.  *Id.*

{39}    The United States Supreme Court has declared its "healthy regard for the federal policy favoring arbitration" under the FAA.  *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 74 L. Ed. 2d 765, 785 (1983).  To that end, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."  *Id.* at 24-25, 74 L. Ed. 2d at 785.

{40}    This "heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration."  *Peoples Sec.*

---

[4] *But see James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d 76, 78 (Del. 2006) (holding that (1) questions of substantive arbitrability, that is, disputes over the scope of an arbitration provision, are for a court to decide **unless** there is "clear and unmistakable evidence" that the parties intended otherwise; and (2) reference to the American Arbitration Association ("AAA") rules "evidences a clear and unmistakable intent to submit arbitrability issues to an arbitrator.").  The Operating Agreement in this case identifies the AAA commercial rules as the default mechanism for arbitration unless the parties reach some other agreement.  (Am. Compl. Ex. D § 12.14.)  Arguably, this is not "clear and unmistakable evidence" that the parties waived their right to have a court decide questions of substantive arbitrability.  Regardless, because our courts have not addressed this precise question, I do not believe it appropriate to defer to the arbitrator as to the scope of the arbitration provision at issue here.

*Life Ins. Co. v. Monumental Life Ins. Co.*, 867 F.2d 809, 812 (4th Cir. 1989) (citing *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 583 n.7, 4 L. Ed. 2d 1409, 1418 n.7 (1960)).[5]

{41}    The signatories to the Operating Agreement in this case agreed (with one exception relating to the determination of the Company's fair market value for purposes of redeeming a member's interest) to arbitrate any "controversy or claim arising out of or relating to this Agreement, or to the interpretation, breach or enforcement thereof[.]"  (Compl. Ex. D § 12.14.) By any measure, this clause is a broad one, capable of an expansive reach.  *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 398, 18 L. Ed. 2d 1270, 1274 (1967) (labeling as "broad" a clause that required arbitration of "any controversy or claim arising out of or relating to this Agreement . . . .").

{42}    In such a case, courts determine the reach of the arbitration provision by looking to whether "a 'significant relationship' exists between the asserted claims and the contract in which the arbitration clause is contained."  *Long v. Silver*, 248 F.3d 309, 316 (4th Cir. 2001); *accord Sloan Financial Group, Inc., v. Beckett*, 159 N.C. App. 470, 479, 583 S.E.2d 325, 330-31 (2003).

{43}    As to the parties that may properly insist on arbitration, the Court acknowledges that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  *United Steelworkers*, 363 U.S. at 582, 4 L. Ed. 2d at 1417.

{44}    Nevertheless, "well-established common law principles dictate that in an appropriate case a nonsignatory can enforce, or be bound by, an arbitration provision within a contract executed

---

[5] The Court recognizes that it is not "bound, as to matters of federal law, by decisions of federal courts other than the United States Supreme Court." *Enoch v. Inman*, 164 N.C. App. 415, 420, 596 S.E.2d 361, 365 (2004). Nevertheless, I find the Fourth Circuit's views on the issues before me persuasive and otherwise consistent with North Carolina state appellate cases. *See, e.g., Johnston County v. R.N. Rouse & Co., Inc.*, 331 N.C. 88, 91, 414 S.E.2d 30, 32 (1992) (noting North Carolina's "strong public policy" in favor of arbitration).

by other parties." *Washington Square Sec., Inc. v. Aune*, 385 F.3d 432, 435 (4th Cir. 2004) (quoting *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 416-17 (4th Cir. 2000)).

{45}    For example, "[w]hen the charges against a parent company and its subsidiary are based on the same facts and are inherently inseparable, a court may refer claims against the parent to arbitration even though the parent is not formally a party to the arbitration agreement." *J.J. Ryan & Son, Inc. v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 320-21 (4th Cir. 1988).  Such a result is appropriate because of "the close relationship between the entities involved, as well as the relationship of the alleged wrongs to the nonsignatory's obligations and duties in the contract and [the fact] that the claims [are] 'intimately founded in and intertwined with the underlying contract obligations.'" *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*, 10 F.3d 753, 757 (11th Cir. 1993) (quoting *McBro Planning and Dev. Co. v. Triangle Elec. Constr. Co., Inc.*, 741 F.2d 342, 344 (11th Cir. 1984)).

{46}    With these principles in mind, the Court turns to the instant case.

### 3.

### WHO MAY ARBITRATE?

{47}    The Court first determines who may arbitrate.  It is clear enough that the Ameritex Companies did not sign the Operating Agreement containing the arbitration clause.  (*See* Compl. Ex. D 15.)  That said, however, the Court would be hard-pressed to imagine a scenario where the relationship between the parties before it, the wrongs alleged, and the rights and obligations under the contract at issue were more intertwined.

{48}    The claims in this case arise from an apparently failed business relationship.  (*See* Am. Compl. ¶¶ 7-30.)  Green and Short created Asia Apparel to import textile goods from overseas

11

markets for sale in the United States. (Am. Compl. ¶ 7.) Their business plan included the execution of an Operating Agreement that named Short a member/manager of the Company, appointed him President, and delineated his management responsibilities. (*See* Compl. Ex. D.)

{49} Green seeks equitable and monetary relief for a litany of misconduct allegedly committed by Short during his tenure as the Company's Manager and President. (*See* Am. Compl. Prayer for Relief.) He alleges that Short wholly owns the Ameritex Companies and that they were created as production resources for the goods to be sold by Asia Apparel. (Am. Compl. ¶ 9.) According to Green, however, Short has instead used the Ameritex Companies as a conduit for his misconduct, through which Short has funneled funds and resources that properly belong to Asia Apparel. (Am. Compl. ¶ 66.)

{50} As a result, virtually every claim in the Amended Complaint refers, either explicitly or by implication, to the Operating Agreement and Short's alleged failure to abide by its terms. (*See* Am. Compl. ¶¶ 31-125.)

{51} On these facts, the Court has little difficulty concluding that the non-signatory Ameritex Companies may invoke the arbitration clause in the Operating Agreement to compel arbitration. *Compare Long*, 248 F.3d at 320 (allowing non-signatory shareholders to invoke arbitration clause in corporate agreement where shareholders were all officers and board members and, as the only shareholders, controlled all activities of the corporation).

**4.**

**WHAT CLAIMS MAY BE ARBITRATED?**

{52} Next, the Court considers to what extent Green's claims fall within the scope of the arbitration clause found in the Operating Agreement. I hold that all of Green's claims are subject to arbitration.

{53}    For ease of analysis, the Court groups the claims as follows:

(1) claims seeking primarily injunctive relief and the appointment of a receiver, (Plaintiff's first, second, fourth, fifth, eighth, ninth, tenth, and thirteenth claims for relief);

(2) the claim for dissolution, (Plaintiff's third claim for relief);

(3) the contract claims, (Plaintiff's sixth and twelfth claims for relief);

(4) the fraud claim, (Plaintiff's seventh claim for relief);

(5) the claim alleging a violation of the North Carolina Unfair and Deceptive Trade Practices Act (the "UDTPA"), N.C.G.S. §§ 75-1 to -39 (2006), (Plaintiff's eleventh claim for relief); and

(6) the claim for punitive damages, (Plaintiff's fourteenth claim for relief).

**a.**

**CLAIMS FOR INJUNCTIVE RELIEF AND THE APPOINTMENT OF A RECEIVER**

{54}    In his first claim for relief, Green alleges that Short breached certain fiduciary duties to Asia Apparel and its members by, among other things, (1) wrongfully allocating funds and resources properly belonging to Asia Apparel, (2) refusing to repay certain loans made by Green to Asia Apparel, (3) refusing to adjust Green's capital contribution account to reflect the proper value of Green's investment, and (4) refusing to properly account for a stock pledge made by Green in furtherance of the Company's operations.  (Am. Compl. ¶ 32.)[6]

{55}    As to this claim, Green seeks (1) an accounting of the assets of Asia Apparel and the Ameritex Companies, (2) access to the books, records, and financial information of Asia Apparel and the Ameritex Companies, (3) the removal of Short as Asia Apparel's Manager and President, and/or an order placing specific limitations on Short's ability to conduct the Company's

---

[6] The Amended Complaint contains two paragraphs numbered "32".  This citation refers to the first of these paragraphs.

13

business, and (4) an order freezing the assets of Asia Apparel pending the appointment of a receiver. (Am. Compl. ¶ 32.)[7]

{56} Green's second, eighth, ninth, and tenth claims for relief plead similar facts. In these claims, Green seeks equitable relief and money damages based on allegations that Short breached his common law duties of loyalty and due care with respect to his management of Asia Apparel, took advantage of his position of trust and confidence, and, thereby, frustrated Green's reasonable expectations as a minority member, including Green's expectation that: (1) Short would discharge his duties as an officer and member/manager competently and in a manner consistent with the best interests of the Company and its members, (2) Green would receive timely and meaningful access to financial and other information regarding Asia Apparel's operations, (3) Green would have a voice and vote at all duly noticed member meetings, and (4) Green would receive compensation and/or fair value for his investment. (Am. Compl. ¶¶ 43-56, 93-99.)

{57} Green also alleges that the "managers, directors, and other officers of Asia Apparel are deadlocked in the management of the affairs of the Company," the parties are unable to break the deadlock, and "liquidation is necessary to protect the rights and interests of Plaintiff Green . . . ." (Am. Compl. ¶ 50.)

{58} Green's fourth and fifth claims for relief demand an accounting of the assets of Asia Apparel and a declaratory judgment as to the rights and obligations of the parties under the Operating Agreement. (Am. Compl. ¶¶ 75-79.)

{59} Similarly, Green's thirteenth claim for relief asserts that the Defendants should account for certain funds and assets belonging to Green and Asia Apparel that the Defendants allegedly converted to their own use. (Am. Compl. ¶¶ 109-13.)

---

[7] This citation refers to the second paragraph numbered "32".

{60}    All of Green's claims for injunctive and other equitable relief arise out of the Operating Agreement. It is the Operating Agreement that memorializes Short's appointment as Asia Apparel's Manager and President, (Am. Compl. Ex. D § 4.1), and it is also the Operating Agreement that defines Short's duties and responsibilities *vis-à-vis* the Company and its members. (Compl. Ex. D §§ 3.1-3.7.) The Operating Agreement also establishes a member's rights to obtain access to the Company's records or an audit of the books of account. (Compl. Ex. D § 12.1.)

{61}    Further, it could not be clearer that the misconduct alleged in these claims arises from Short's management of the Company's affairs, which, in turn, forms the basis for Green's request that the Court strip Short of his authority to continue managing the business. Similarly, Green's alleged expectations as a member of Asia Apparel exist only by virtue of the Operating Agreement. Moreover, the parties' alleged deadlock regarding the management of the Company's business derives directly from the various rights and obligations of the Company's officers and member/managers, as set forth in the Operating Agreement.

{62}    Accordingly, because the allegations that form the basis for these claims bear a "significant relationship" to the Operating Agreement, which, as discussed earlier, contains an arbitration clause governed by the FAA, they are all subject to arbitration. *See Long,* 248 F.3d at 316; *cf. Harter v. Iowa Grain Co.*, 220 F.3d 544, 549-51 (7th Cir. 2000) (affirming trial court's submission of a breach of fiduciary duty claim to arbitration).

{63}    This result is not altered by Green's prayer for equitable relief. By specifically adopting the AAA commercial rules as the default mechanism for arbitration, the parties here bargained to have an arbitrator determine the merits of any request for equitable relief, including requests for injunctions and the appointment of a receiver. This is because the AAA rules authorize an

15

arbitrator to "take whatever interim measures he or she deems necessary, including injunctive relief and measures for the protection or conservation of property and disposition of perishable goods." AAA, Commercial Arbitration Rules, R-34(a) (2005).

{64} Consistent with this broad grant of authority, the federal cases uniformly affirm the power of an arbitrator to enter interim injunctive relief awards. *See, e.g., Arrowhead Global Solutions, Inc. v. Datapath, Inc.*, No. 04-2000, 2006 U.S. App. LEXIS 2786, at *44 (4th Cir. Feb. 3, 2006) (recognizing authority of arbitrators to grant temporary equitable relief in the nature of a preliminary injunction).

{65} This same broad grant of authority empowers an arbitrator to appoint a receiver when necessary to preserve the status quo pending resolution of the substantive claims. *See generally Zabinski v. Bright Acres Assocs.*, 346 S.C. 580, 553 S.E.2d 110 (2001) (compelling arbitration of all claims regarding the management and winding up of a partnership and directing arbitrator to distribute partnership funds where partnership agreement contained an arbitration provision governed by the FAA and the parties opposing arbitration moved for appointment of a receiver); *but see Ravin, Sarashohn, Cook, Baumgarten, Fisch & Rosen, P.C., v. Lowenstein Sandler, P.C.*, 839 A.2d 52 (N.J. Super. Ct. App. Div. 2003) (holding that AAA commercial rules did not give arbitrator power to appoint a receiver).[8]

{66} Green apparently does not dispute that an arbitrator may award some interim equitable relief, but he resists that route here, arguing that "such equitable relief could be thwarted by the further delay inherent in re-submitting claims properly before this court, selecting arbitrators, and

---

[8] The dispute in *Ravin* did not appear to involve an arbitration agreement governed by the FAA. On that ground alone it is distinguishable, as the holding fails to reconcile the broad federal mandate that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hosp.*, 460 U.S. at 24-25, 74 L. Ed. 2d at 785. Second, with all due respect to my colleagues in New Jersey, when parties agree to be bound by arbitration rules that, among other things, allow an arbitrator to "take **whatever** interim measures he or she deems necessary" to protect or conserve property pending resolution of the underlying claims, AAA, Commercial Arbitration Rules, R-34(a) (2005) (emphasis added), they should not be surprised when a court takes them at their word.

16

obtaining a hearing already two months past due." (Resp. to Mot. to Stay and Compel Arbitration 7.) I disagree.

{67} There is a split of authority as to whether the FAA authorizes a court to enter preliminary injunctive relief where the parties have agreed to arbitrate their dispute. *Compare Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley*, 756 F.2d 1048, 1055 (4th Cir. 1985) (holding that district courts retain such authority, despite the parties' agreement to arbitrate, where an injunction is necessary to preserve the status quo), *and Performance Unlimited, Inc., v. Questar Publishers, Inc.*, 52 F.3d 1373, 1377-80 (6th Cir. 1995) (reaching the same result and citing similar holdings of the Second, Third, Seventh, and Ninth Circuits), *with Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Hovey*, 726 F.2d 1286, 1291 (8th Cir. 1984) (holding that a grant of injunctive relief in an arbitrable controversy "abrogates the intent of the Federal Arbitration Act and consequently was an abuse of discretion.").

{68} Assuming, without deciding, that the Court retains discretion to enter interim injunctive relief, I find no basis for doing so here.

{69} In the first place, Green bears substantial responsibility for the delay he complains of by opting for litigation in the face of his assent to an agreement containing a broad arbitration clause.

{70} Second, Green never sought a temporary restraining order following the filing of his complaint, nor has he taken proper steps, either before or after the case was assigned to me, to be heard on his requests for a preliminary injunction or the appointment of a receiver.

{71} Finally, as noted earlier, the AAA commercial rules—which the parties selected as the default arbitration process absent an agreement otherwise—provide what appear to be streamlined procedures for obtaining interim equitable relief. *See* AAA, Commercial Arbitration

Rules, R-20, R-34 (2005) (allowing for preliminary hearings and establishing authority of arbitrator to award interim equitable relief); *see also* AAA, Optional Rules for Emergency Measures of Protection, O-1 to O-8 (2005).

{72}   In sum, I am not convinced that Green's prayer for equitable relief warrants this Court's immediate attention, and I find no reason to preempt an arbitrator's consideration of this issue.

**b.**

**CLAIM FOR DISSOLUTION**

{73}   Green's third claim for relief is a shareholder's derivative claim.  (Am. Compl. ¶¶ 63-74.) This claim is premised on Green's status as a member of Asia Apparel under the Operating Agreement, and the allegations essentially parrot the claims made by Green in his individual capacity.  Because this claim is "significantly related" to the Operating Agreement, it too is arbitrable.  *See Long*, 248 F.3d at 316.

{74}   Green argues, however, that arbitration of this claim is inappropriate because he seeks— as an alternative to redemption of his member interest in Asia Apparel—a judicial dissolution of the Company, a remedy Green insists is "committed to the jurisdiction of the Superior Court both by the Legislature and the arbitration agreement."  (Resp. to Mot. to Stay and Compel Arbitration 5.)  I disagree.

{75}   Green is correct that The North Carolina Limited Liability Company Act (the "Act") provides for the entry of a decree of judicial dissolution under specified circumstances.  N.C.G.S. § 57C-6-02 (2006).  Under the Act, this Court may order dissolution of Asia Apparel if Green establishes that:

> (i) the managers, directors, or any other persons in control of the limited liability company are deadlocked in the management of the affairs of the limited liability company, the members are unable to break the deadlock, and irreparable injury to the limited liability company is threatened or being

18

suffered, or the business and affairs of the limited liability company can no longer be conducted to the advantage of the members generally, because of the deadlock; (ii) liquidation is reasonably necessary for the protection of the rights or interests of the complaining member; (iii) the assets of the limited liability company are being misapplied or wasted; or (iv) the articles of organization or a written operating agreement entitles the complaining member to dissolution of the limited liability company . . . .

N.C.G.S. § 57C-6-02(2) (2006).

{76}    It is also true that the Operating Agreement states the obvious, that is, that the Company will be dissolved upon entry of a decree of judicial dissolution.  (Compl. Ex. D § 11.1(e).)  But, I find nothing in the Act or the language of the Operating Agreement that prevents an arbitrator from deciding this issue.

{77}    In the first place, the arbitration clause at issue here is broad enough to encompass Green's claim for dissolution, in that the requested relief is a "controversy or claim arising out of or relating to" the Operating Agreement.  (*See* Compl. Ex. D § 12.14.)

{78}    Second, the findings required for judicial dissolution under the Act parallel the allegations made by Green in his Amended Complaint.

{79}    Third, while the Operating Agreement refers generally to the remedy of judicial dissolution, it does not mandate a judicial determination of the issue.  *See Terex Corp. v. STV USA, Inc.*, No. 1614-N, 2005 Del. Ch. LEXIS 159 (Del. Ch. Oct. 20, 2005) (holding that judicial dissolution could be entered in accordance with and following dissolution proceedings before an arbitrator); *cf. James & Jackson*, 906 A.2d at 81 (affirming Court of Chancery's determination that claim for judicial dissolution was not subject to arbitration where the agreement mandated a "judicial determination that an event has occurred that makes it unlawful, impossible or impractical to carry on [the company's] business.").

19

{80} Fourth, what little case law exists on the subject in North Carolina suggests no bar to arbitrability of claims for dissolution. *See, e.g., Cahoon v. Ziman*, 60 N.C. App. 226, 298 S.E.2d 729 (1983) (affirming arbitral award of dissolution of a partnership).

{81} Fifth, to the extent that the Operating Agreement can be read to require judicial oversight over the dissolution process, this mandate is satisfied by the parties' default mechanism for arbitration. Specifically, AAA Commercial Arbitration Rule 48(c) provides that parties shall be deemed to have consented to confirmation of an arbitration award in any federal or state court with jurisdiction, thus providing whatever judicial oversight may have been bargained for by the parties in their contract. AAA, Commercial Arbitration Rules, R-48(c) (2005); *see also Jackman v. Jackman*, No. 06-1329-MLB-DWB, 2006 U.S. Dist. LEXIS 92917 (D. Kan. Dec. 21, 2006) (stating that dissolution by arbitration is consistent with entry of decree of judicial dissolution where arbitration clause provides for judicial confirmation of the award).

{82} As a result, I hold that Plaintiff must press his claim for dissolution before an arbitrator. *See, e.g., Johnson v. Foulk Road Med. Ctr. P'ship*, No. 18984, 2001 Del. Ch. LEXIS 143 (Del. Ch. Nov. 21, 2001) (concluding that claim for judicial dissolution could properly be resolved by arbitration).

### c.

### CONTRACT CLAIMS

{83} Green's sixth and twelfth claims for relief, alleging breach of contract and unjust enrichment, arise from Short's alleged obligation to repay various operating loans and advances on expenses made by Green to Asia Apparel. (Am. Compl. ¶¶ 80-84, 106-09.) Because these claims relate directly to the parties' relationship under the Operating Agreement, they too are arbitrable. *See Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 95 (4th

Cir. 1996) (rejecting argument that *quantum meruit* claim by definition arises outside of the relevant agreement and holding instead that a claim "may arise outside of an agreement and yet still be related to that agreement" for purposes of arbitrability.)

### d.

### FRAUD CLAIM

{84}    Green's seventh claim for relief alleges fraud.  More specifically, Green catalogues a host of misrepresentations by Short that purportedly induced him to invest in Asia Apparel, as well as other false statements by Short and the Ameritex Companies related to the conduct of Asia Apparel's business operations.  (Am. Compl. ¶ 91.)  As to the former, claims alleging fraudulent inducement are arbitrable unless the fraud goes to the arbitration clause in particular.  *Prima Paint*, 388 U.S. at 402-04, 18 L. Ed. 2d at 1276-77.  Green makes no such argument here, and, therefore, this portion of the fraud claim may be submitted to arbitration.  As to the latter, the Court finds that these allegations strike at the heart of the parties' respective rights and obligations under the Operating Agreement, making them ripe for arbitration.

### e.

### UNFAIR AND DECEPTIVE TRADE PRACTICES CLAIM

{85}    Green's eleventh claim for relief alleges unfair and deceptive trade practices, both individually and derivatively on behalf of Asia Apparel.  (Am. Compl. ¶¶ 100-05.)  Unless the parties to an arbitration agreement unequivocally provide otherwise, arbitrators may consider an UDTPA claim and award treble damages under the UDTPA.  *WMS, Inc.*, 166 N.C. App. at 359, 602 S.E.2d at 711.

{86}    Nothing in the arbitration clause at issue here precludes an arbitrator from considering an UDTPA claim.  Moreover, because this claim merely recasts the prior allegations of the

21

Amended Complaint as sufficient to support treble damages under the UDTPA, it too should be arbitrated.  *See Long*, 248 F.3d at 319.

## f.

## PUNITIVE DAMAGES CLAIM

{87}    Finally, Green's fourteenth claim for relief is for punitive damages with respect to the Defendants' alleged misconduct.  (Am. Compl. ¶¶ 114-25.)  Because I have determined that all claims alleged in the Amended Complaint are subject to arbitration and "[b]ecause the issue of punitive damages was not exempted from the arbitration clause by the governing agreement[]," *Long*, 248 F.3d at 319 (citing *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 59-60, 131 L. Ed. 2d 76, 85-86 (1995)), it too is subject to arbitration.  *Accord WMS, Inc.*, 166 N.C. App. at 359, 602 S.E.2d at 710-11.

## CONCLUSION

{88}    The Court **DENIES** Plaintiff's Motion for Entry of Default and **GRANTS** Defendants' Motion to Stay and Compel Arbitration.  Pursuant to N.C.G.S. § 1-567.3(d) (2002),[9] this matter is **STAYED** pending completion of the arbitration proceedings.


This the 9th day of March, 2007.

---

[9] This statute, since repealed, applies to all arbitration agreements made before January 1, 2004.  Act of July 27, 2003, § 4, 2003 N.C. Sess. Laws 345 ("Agreements to arbitrate made before January 1, 2004, shall be governed by Article 45A of Chapter 1 of the General Statutes . . . .").